IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FORD MOTOR COMPANY**, a
Delaware corporation, and **FORD
GLOBAL TECHNOLOGIES, LLC**,
a Delaware Limited Liability Company,

       Plaintiffs,

v.

**LAUNCH TECH CO. LTD.**, a
Chinese corporation, and **LAUNCH
TECH (USA), INC.**, a California
corporation,

       Defendants.

Civil Action No. 2:17-cv-12906-NGE-DRG

Honorable Nancy G. Edmunds

GREGORY D. PHILLIPS (P80801)
JARED L. CHERRY (P80800)
**PHILLIPS RYTHER &
WINCHESTER**
600 East 124 South
Salt Lake City, Utah 84102
Tel: (801) 935-4935
Fax: (801) 935-4936
Attorneys for Plaintiff

## FIRST AMENDED COMPLAINT

Plaintiffs Ford Motor Company and Ford Global Technologies, LLC

("FGTL" and collectively "Ford") for their claims against defendants Launch Tech

Co. LTD. ("Launch China") and Launch Tech (USA), Inc. ("Launch USA")

(collectively "Launch") alleges as follows:

## NATURE AND SUBSTANCE OF THE ACTION

1.      Ford files this complaint against Launch for trademark infringement,

false designation of origin, unfair and deceptive trade practices in violation of

Michigan statutory and common law, copyright infringement, and

misappropriation of trade secrets and confidential business information based upon

Launch's hacking of Ford Integrated Diagnostic System ("IDS"), which consists of

Ford's IDS Software and Ford's IDS Hardware, to gain access to a proprietary

database of Ford diagnostic information.  Ford seeks damages, statutory damages,

injunctive relief, Ford's attorneys' fees and costs, and other appropriate relief.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the claims relating to

the Copyright Act (17 U.S.C. §§ 101, 501) and the Lanham Act (15 U.S.C. §§

1125 et. seq.) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction)

and 28 U.S.C. § 1338(a) (any act of Congress relating to copyrights, patents and

trademarks).

2

3.    This Court also has subject matter jurisdiction under the Defense of Trade Secrets Act ("DTSA") (18 U.S.C. § 1836, et. seq.).

4.    This Court also has subject matter jurisdiction over the related state law claims under 28 U.S.C. § 1367 (action asserting a state claim of unfair competition joined with a substantial and related federal claim under the patent, copyright or trademark laws).

5.    This action arises out of wrongful acts committed by Launch USA that are intentionally targeted at Ford in this District that subject Launch USA to personal jurisdiction here.

6.    This action arises out of wrongful acts committed by Launch China that are intentionally targeted at Ford in this District that subject Launch China to personal jurisdiction here.

7.    Launch USA markets, sells, furnishes, and supports the accused infringing products throughout the United States, including in the State of Michigan, a fact that has already been established in a written declaration submitted by Launch China's Executive Vice-President, James Jiang.  *See Ford Motor Company et al. v. Autel US Inc., et al.*, Dkt. No. 66 at ¶ 12 (the "James Jiang

3

Declaration") (asserting Launch USA provides services for Launch products, such as "repairs, warranty services and software updates.")

8.    Launch USA utilizes a network of "Distributors" to sell the products at issue in this lawsuit in Michigan, including Matco Tools, Napa Auto Parts, Mac Tools, AutoZone, Car Quest, and others, as shown in Launch USA's website, which is shown in Image 1.

Image 1



4

9.      Agents of Ford have purchased Launch products from the "Distributors" identified on Launch USA's webpage at brick-and-mortar retail facilities in Michigan.

10.     The Equipment and Tools Institute ("ETI") is a Michigan-based trade association with its principal place of business located in Farmington Hills, Michigan.

11.     ETI gathers diagnostic information from various original equipment manufacturers, including Ford, and makes such information available to manufacturers of diagnostic tools via ETI's TEK-NET Library for inclusion in diagnostic tools manufactured by ETI members.

12.     An entity identified as "Launch Tech"[1] is a member of ETI.  A copy of the listing of "ETI Member Companies," including "Launch Tech," is attached hereto as Exhibit B.

---

[1] It is unclear whether the ETI member "Launch Tech" is Launch Tech USA, Inc. or to Launch Tech Co. Ltd, since both entities begin with the terms "Launch Tech."

5

13.     At least two individuals associated with "Launch Tech" are identified as "active participants" in ETI, including Mr. Harlan Siegel.  Exhibit C.

14.     Mr. Harlan Siegel's LinkedIn Profile states that he is the "Vice President, Diagnostics at Launch Tech, USA" and that Mr. Siegel is located in the "Greater Detroit Area."  Exhibit D.

15.     Mr. Harlan Siegel is an employee or agent of Launch USA and is based in the "Greater Detroit Area."

16.     Launch Tech USA's website identifies John Marsh as the "field service rep" for the state of Michigan, and provides a telephone number of 989-513-4000.

17.     The area code 989 is assigned to telephone numbers in this judicial district.

18.     On information and belief, Ford alleges that John Marsh is an employee or agent of Launch USA and is based in this judicial district.

19.     The James Jiang Declaration states that Launch's products are developed by Launch China, and that Launch USA is merely a distributor of products purchased from Launch China.  James Jiang Declaration at ¶¶ 3-4, 6.

6

20.     Further, counsel for Launch USA represented to Ford in a letter dated August 22, 2017, that the products sold by Launch USA are "provided complete to our client. Our client has nothing to do with writing the software.  Our client's input with regard to the product is limited to how it performs functionally." Exhibit E.

21.     By virtue of "Launch Tech's" membership in ETI, Launch China obtains information relating to Ford vehicles from ETI's TEK NET Library to develop products at issue in this lawsuit.

22.     In the alternative, by virtue of "Launch Tech's" membership in ETI, Launch USA obtains information relating to Ford vehicles from ETI's TEK Net Library to develop products at issue in this lawsuit and collaborates with Launch China in the development of the products at issue in this lawsuit using such information.

23.     "Launch Tech's" membership and active participation in ETI are actions purposefully directly at this jurisdiction and are directly relevant to the wrongful conduct at issue in this lawsuit because the information made available by Ford through ETI's TEK-NET Library is used in the development of the products at issue in this lawsuit.  Moreover, Launch China's participation in ETI

7

through Launch USA are also actions purposefully directly at this jurisdiction and are directly relevant to the wrongful conduct at issue in this lawsuit because the information made available by Ford through ETI's TEK-NET Library is used in the development of the products at issue in this lawsuit

24.    Launch China is the registrant of the Internet domain name x431.com, as shown in the WhoIs record for the domain name, a copy of which is attached hereto as Exhibit F.

25.    Users of the Launch X-431 V product must register at the website www.x431.com to utilize the product.

26.    Users of the Launch X-431 Pro product must register at the website www.x431.com to utilize the product.

27.    Users in Michigan can access and download software, user manuals, and other materials for Launch's diagnostic tools, including the X-431 Pro product and the X-431 V product, using the website available at www.x431.com.

28.    Agents of Ford in Michigan have registered Launch's products and downloaded software that is the subject of the claims set forth herein using the website available at www.x431.com.

8

29.    The software made available by Launch China via the website available at www.x431.com constitutes digital instructions transmitted from Launch China to end users of Launch's products, in order to change software programming contained in Launch's products, at least some of which end users are physically located in Michigan.

30.    Launch China directly collects revenue from purchasers of the EasyDiag 2.0 product via Paypal for the purchase of "vehicle lines," such as Ford, using the email address jiangbo.zhang@cnlaunch.com.

31.    The User's Manual for the EasyDiag Series, available at https://launchtechusa.com/easydiag2plus/, specifically illustrates the option to pay via Paypal for purchase of the "USA FORD" product line, as shown in Image 2.



32. Launch China has represented to the United States Patent and Trademark Office that, as the owner of the U.S. Federal Trademark registrations listed in Table 1, it is engaged in interstate commerce in the United States using these trademarks.

10

| Table 1 | | |
| --- | --- | --- |
| Serial No. | Registration No. | Trademark |
| 86/022,590 | 4,857,490 |  |
| 86/022,396 | 4,566,781 | DBSCAR |
| 86/729,366 | 4,955,155 |  |
| 86/729,353 | 4,955,152 | GOLO |
| 86/649,604 | 4,881,277 | LAUNCH |
| 86/106,388 | 4,559,553 |  |
| 78/285,985 | 2,916,207 | LAUNCH |

33.    Copies of the Registration Certificates for each of the trademarks shown in Table 1 are attached hereto as Exhibit G.

11

34.     The products at issue in this lawsuit bear the trademarks that Launch

China has attested to the United States Patent and Trademark Office that it uses in

commerce in the United States.

35.     The Launch X-431 Pro product and its associated carrying case bears

the trademarks LAUNCH, DBSCAR, and , as shown in Image 3 and Image 4.

| Image 3 Launch X-431 Pro Product |
|---|
|  |

| Image 4 |
| --- |
| Carrying Case for Launch X-431 Pro Product |



36.    The Launch X-431 V product and its associated carrying case bears

the trademarks LAUNCH, DBSCAR, and , as shown in Image 5 and Image 6.

13

| Image 5 |
| :---: |
| Launch X-431 V Product and DBSCAR Adapter |
|  |

| Image 6 |
| :---: |
| Carrying Case for Launch X-431 V Product |
|  |

37.    The Launch X-431 Diagun product and its associated packaging bears the trademark LAUNCH, as shown in Image 7.

| Image 7 |
| --- |
| Launch X-431 Diagun Product |



38.    The Launch EasyDiag 2.0 product and its associated packaging bears the trademark LAUNCH, as shown in Image 8.

Image 8
Launch EasyDiag 2.0 Product



39.    A company identified in Ford's records as "L aunch"[2] has maintained at least one active version of Ford's IDS Software since November 19, 2013.  A copy of the purchase history for "L aunch" is attached hereto as Exhibit H.

40.    The contact information for the company "L aunch" is shown in Image 9.

| Image 9 Contact Information for "L aunch" |
| --- |



Customer Contact Information

Username: *    samford
Password: *    Click here to change password
Company Name: *    L aunch
Contact Name: *    Shi Shi
Address: *    1820 S Milliken Ave
Address 2:
City: *    Ontario
State/Province: *    CALIFORNIA
Postal Code: *    91761
Country: *    UNITED STATES
Please Note that IDS Software License purchases are limited to the countries listed in the Country drop-down list.
Phone: *    9096061815
Email: *    sam.shi@launchtechusa.com
* denotes a required field.

---

[2] The "Company Name" field in Ford's records includes a space between the letters "L" and "a" in the word "L aunch," presumably to ensure that Defendant could not be identified by searching for the term "Launch."  In other words, the space between the letters "L" and "a" was inserted by Defendants, and is not a typographical error in this Complaint.

41.     On July 17, 2017, Ford notified counsel for Launch China of Ford's claims regarding infringement of Ford's intellectual property rights.

42.     On July 27, 2017, Ford provided a copy of the end-user license agreements applicable to various versions of Ford's IDS Software to counsel for Launch China and specifically reiterated Ford's contention that Defendants were in violation of the end-user license agreements applicable to Ford's IDS Software.

43.     On August 14, 2017, the contact information for "L aunch" was updated as shown in Table 2.

| Table 2 | | |
|---|---|---|
| | Prior Value | New Value |
| Contact Name | Shi Shi | Xianglong Zuo |
| Address | 1820 S Milliken Ave Ontario, CA 91761 United States | 1757 E Flora St. Ontario, CA 91764 United States |
| Phone | 909-606-1815 | 91-777-54299 |
| Email | sam.shi@launchtechusa.com | Sandyshi1820@gmail.com |

44.     Prior to August 14, 2017, the address and email associated identified "L aunch" as being associated with Launch USA.

45.     On information and belief, the changes made on August 14, 2017, were an attempt to conceal the fact that Defendants purchased at least one

additional activation code for Ford's IDS Software after receiving specific notice of Ford's claims of violations of Ford's rights based, among other things, on Defendants' use of Ford's IDS Software.

46.    The "activation codes" shown in Exhibit H and acquired by "L aunch" were entered during installation of Ford's IDS Software on "L aunch's" computer systems to activate Ford's IDS Software using Ford's licensing server located in Michigan.

47.    The "activation codes" shown in Exhibit H were purchased from Helm, Inc., a Ford vendor located in Michigan.

48.    The purchases of the "activation codes" shown in Exhibit H were processed on Helm, Inc.'s servers located in Michigan.

49.    By virtue of "L aunch's" acquisition, activation, and use of the IDS Software, Launch China improperly obtained information relating to Ford vehicles from the IDS Software to develop products at issue in this lawsuit.

50.    "L aunch's" acquisition, activation, and use of Ford's IDS Software from Ford and use of the "Activation Codes" are actions purposefully directed at this jurisdiction in furtherance of the tortious conduct alleged herein, including "L aunch's" extraction and pirating of confidential and proprietary information from

19

Ford's IDS Software and "L aunch's" infringement of copyrighted materials contained in Ford's IDS Software.

51. In the alternative, by virtue of "L aunch's" acquisition of the IDS Software, Launch USA improperly obtained information relating to Ford vehicles from the IDS Software and collaborated and conspired with Launch China in the development of the products at issue in this lawsuit unlawfully using such information.

52. On information and belief, Ford alleges each Defendant was the agent, employee, partner, and/or joint venturer of each of the other Defendants and, in committing the acts alleged herein, was acting within the course and scope of that relationship and with the permission and consent of the other Defendant, and that they have acted in concert with each other in connection with the allegations herein.

53. Venue is proper in this judicial district under 28 U.S.C. § 1391.

**THE PARTIES**

54. Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan.

20

55.     FGTL is a Delaware limited liability company with its principal place of business in Dearborn, Michigan, and is a wholly-owned subsidiary of Ford Motor Company.

56.     Defendant Launch USA is a California corporation having a principal place of business at 1820 South Milliken Avenue, Ontario, California.

57.     Defendant Launch China is a Chinese corporation having a principal place of business at Room 1819, Launch Industrial Park, North Wuhe Rd, Banxuegang, Longgang, Shenzhen, Guangdong P.R., China.

## **FACTS COMMON TO ALL CLAIMS**

58.     Ford is one of the world's largest producers of cars and trucks.

59.     Ford was incorporated in Delaware in 1919, after acquiring the business of a Michigan company, also known as Ford Motor Company, which was incorporated in 1903 to produce and sell automobiles designed and engineered by Henry Ford. In addition to producing, leasing, and selling cars and trucks, Ford also provides retail customers with a wide range of after-sale vehicle services and products through its dealer networks and other channels, including automotive repair.

21

A.    **Ford has Expended Great Effort and Expense Developing the Ford Marks.**

60.    FORD®, the FORD OVAL®, and the LINCOLN STAR® are some of the most well-known and highly regarded trademarks in the world.  Ford sold its first automobile at least as early as 1903, and has sold automobiles and many other goods and services under the world-famous FORD®, FORD OVAL®, and LINCOLN STAR® trademarks for many decades.

61.    Ford holds numerous registrations for FORD®, the FORD OVAL®, and the LINCOLN STAR® in the United States and worldwide.  Ford's registrations for FORD®, the FORD OVAL®, and the LINCOLN STAR® are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Ford's exclusive ownership of  these trademarks.  FORD®, the FORD OVAL®, and the LINCOLN STAR® trademarks are referred to hereinafter collectively as the "Ford Marks."

62.    Ford has spent billions of dollars and has expended significant effort in advertising, promoting, and developing the Ford Marks throughout the world. As a result of such advertising and expenditures, Ford has established considerable goodwill in the Ford Marks.  The Ford Marks have become widely known and

22

recognized throughout the world as symbols of high quality automotive goods and services.

63.    The Ford Marks are world-famous and distinctive, and have become associated by the consuming public exclusively with Ford.  The Ford Marks are an invaluable asset of substantial and inestimable worth to Ford.

64.    Ford has registered the FORD®, FORD OVAL®, and LINCOLN STAR® trademarks in the field of automobile repair and maintenance services. Ford has also registered the FORD STYLIZED® trademark in the field of tools and carrying cases therefore.  Table 3 lists specific registrations owned by Ford for the FORD®, FORD OVAL®, FORD STYLIZED®, and LINCOLN STAR® trademarks.

| Table 3 | | | |
|---|---|---|---|
| Mark | Reg. No. | Int'l. Class | Goods and Services |
|  | 3,657,597 | 037 | Automobile repair and maintenance services. |
| FORD | 3,046,211 | 037 | Vehicle repair and maintenance services; emergency roadside services |
|  | 2,034,370 | 009 | Sun glasses, tire pressure gauges, magnets, tape measures, calculators, highway emergency kits comprising primarily jumper cables, flashlight, siphon, flares, safety vest, tools and carrying case therefor sold as a unit, binoculars, thermometers, radios, prerecorded videotapes in the field of automobiles, automotive history and motorsports, compasses; and cases for the foregoing. |
|  | 4,766,840 | 037 | Automotive repair and maintenance services |

24

65.    Copies of the trademark registration certificates for the FORD OVAL® Trademark (U.S. Reg. No. 3,657,597); the FORD® Trademark (U.S. Reg. No. 3,046,211); the FORD STYLIZED® Trademark (U.S. Reg. No. 2,034,370); and the LINCOLN STAR® Trademark (U.S. Reg. No. 4,766,840) are attached hereto as Exhibit I.

**B.    Launch's Products, Internet Website, and Advertising Misappropriate Ford's Trademarks.**

66.    In a cease and desist letter dated January 3, 2012, Ford notified Launch USA of Ford's objection to the use of Ford's Trademarks on Launch's website and products.  A true and correct copy of Ford's cease and desist letter is attached hereto as Exhibit J.

67.    More specifically, Ford's cease and desist letter stated:

Ford requests that you cease and desist all use of Ford's trademarks immediately.  Specifically, Ford demands that Launch USA delete any Ford trademarks, including the Ford Oval trademark, from its website and any products or merchandise, and refrain from using Ford trademarks on any and all of your printed or electronic advertising and promotional materials in the future.

68.    Launch USA signed and returned a copy of Ford's cease and desist letter (the "Cease and Desist Agreement") to indicate its assent, among other things, to the demand that it "refrain from using Ford trademarks on any and all of

25

[its] printed or electronic advertising and promotional materials in the future." *See* Exhibit J.

69.    In spite of Launch's written commitment to refrain from future use of Ford's Trademarks, Launch has used the FORD OVAL® trademark on its products, Internet website, and advertising materials without authorization or a license from Ford.

70.    The United States Customs and Border Protection detained a shipment of the X-431 Diagun product because of the presence of the FORD OVAL® on the packaging and concerns that the product is a counterfeit "because of the inferior quality of the items."  A copy of an email message from U.S. Customs and Border Protection to Mr. Jason Kosofsky, a brand protection specialist in Ford's Global Brand Protection group, is attached hereto as Exhibit K.

71.    Image 10 shows a photograph of one of the items detained by U.S. Customs and Border Protection.

| Image 10 |
|---|
|  |

72.    The X-431 Diagun product displays the FORD OVAL® on the device, as shown in Images 7 and 10, above.

73.    The X-431 Diagun product includes electronic images of the FORD OVAL® on a SD memory card included in the product.

74.    Table 4 includes copies of electronic images contained on the SD memory card included in the X-431 Diagun product.

27

| Table 4 | |
|---|---|
| Electronic Image | File Name |
|  | \DGAUSTFORD\ICON_D.BMP |
|  | \DGAUSTFORD\ICON_U.BMP |

75.    The Launch X-431 V product includes electronic files of the FORD OVAL® Trademark.

76.    Table 5 includes true and correct copies of electronic images contained on the X-431 V product.

28

| Table 5 | |
|---|---|
| Electronic Image | File Name |
|  | \cnlaunch\983642646800\Diagnostic\vehicles\USAFORD\CHANGANFORD.PNG |
|  | \cnlaunch\983642646800\Diagnostic\vehicles\USAFORD\CHANGANFORD_CN.PNG |
|  | \cnlaunch\983642646800\Diagnostic\vehicles\USAFORD\EUROFORD.PNG |
|  | \cnlaunch\983642646800\Diagnostic\vehicles\USAFORD\EUROFORD_CN.PNG |
|  | \cnlaunch\983642646800\Diagnostic\vehicles\USAFORD\ICON.PNG |
|  | \cnlaunch\983642646800\Diagnostic\vehicles\USAFORD\ICON_CN.PNG |
|  | \cnlaunch\983642646800\Diagnostic\vehicles\USAFORD\LINCOLN.PNG |

77.     On information and belief, the Launch X-431 Pro product includes electronic files of the FORD OVAL® Trademark

78.     The FORD® Trademark, the FORD OVAL® Trademark, and the LINCOLN STAR® Trademark are each registered on the principal register in the United States Patent and Trademark Office in Int.'l Class 037 for "automobile repair and maintenance services."

79.     The FORD STYLIZED® Trademark is registered on the principal register in the United States Patent and Trademark Office in Int.'l Class 009 for "tools."

80.     The Launch X-431 Diagun product is a "tool" and is used for "automobile repair and maintenance services."

81.     The Launch X-431 V is a "tool" and is used for "automobile repair and maintenance services."

82.     The Launch X-431 Pro is a "tool" and is used for "automobile repair and maintenance services."

83.     Launch's use of the Ford Marks on the Launch X-431 Diagun Product constitutes counterfeiting under 15 U.S.C. § 1116(d)(1)(B)(i).

84.    Launch's use of the Ford Marks on the Launch X-431 V Product

constitutes counterfeiting under 15 U.S.C. § 1116(d)(1)(B)(i).

85.    Launch USA's advertising materials also use the FORD OVAL®

trademark without authorization or a license from Ford, as shown in Image 11.



Image 11
Promotional video for Launch Scanpad 071, displayed at
http://launchtechusa.com/videos and available at:
https://youtu.be/Zjq7TX1LdPo

86.    Launch's iDiag "app," which Launch China made available via the

Apple iTunes Store up through at least July 17, 2017, features the FORD OVAL®

Trademark, as illustrated in Image 12.

| Image 12 |
|---|
|  |

87. On information and belief, Ford alleges that Launch's iDiag "app" was available on additional device platforms and through other "app" providers in addition to the Apple iTunes Store.

88. Launch has breached the Cease and Desist Agreement by continuing to use the Ford Marks after specifically agreeing to "cease and desist all use of Ford's trademarks…."

**C.**    **Ford's IDS Software Incorporates Copyrighted Information and Trade Secret Information**

89.    Ford has invested tremendous effort and expense in creating and developing the IDS System for the purpose of diagnosing and facilitating the service and repair of Ford vehicles.

90.    The IDS system includes hardware and software components.  The hardware components include the Vehicle Communication Module ("VCM"), the Vehicle Communication Module II ("VCM II"), and the Vehicle Measurement Module ("VMM") (collectively, the "Diagnostic Tools") and a computer system using the Microsoft® Windows® operating system.

91.    The Diagnostic Tools connect to a 16-pin diagnostic link in Ford vehicles, which in turn, is in communication with an on-board computer system in the vehicle.

92.    The IDS Software operates on the computer and receives information from the Diagnostic Tools.  The IDS Software also includes technical information relating to the diagnosis and repair of a vehicle based on data received from the Diagnostic Tools.

33

93.    The IDS Software includes various compilations of data, such as databases, tables, and the like to aid in the operation of the IDS System.

94.    Certain compilations of data within the IDS System are made generally available pursuant to applicable federal statutes.  Other compilations of data within the IDS system, however, are not made publicly available and constitute trade secrets used by Ford and its network of authorized dealers and repair facilities.

95.    One such compilation of data is referred to as the "FFData files."

96.    Ford utilizes a variety of techniques, including encryption technology and obfuscation, to protect trade secret information included in the IDS System, such as the FFData files.

97.    Ford has obtained a copyright registration from the United States Copyright Office for one specific set of data included in the IDS Software and referred to as CALID_VIDQID_REC.  A true and correct copy of the Certificate of Registration is attached hereto as Exhibit L.

34

**D.      Launch's Products Incorporate Ford's CALID_VIDQID_REC Registration.**

98.    Launch's products include a copy of Ford's CALID_VIDQID_REC Registration.

99.    The unlawfully obtained copy of the CALID_VIDQID_REC Registration incudes fictitious data that does not correspond to any vehicles manufactured by Ford.

100.    The code of Launch's X431 V product includes multiple references to Ford's CALID_VIDQID_REC file, including a function titled SearchCALID_VIDQID_REC in the file named libUSAFORD_FILE.so.

101.    On information and belief, Ford alleges that products sold by Launch other than the X431 V product also include unlawfully obtained copies of Ford's CALID_VIDQID_REC data, including but not limited to the X-431 Diagun products.

102.    Launch's software includes 21 files named FORD00.BIN through FORD_20.BIN.

103.    The files named FORD00.BIN through FORD_20.BIN are included in the Launch X-431 Pro product.

35

104.    The files named FORD00.BIN through FORD_20.BIN are included in the Launch X-431 V product.

105.    On information and belief, Ford alleges that the files named FORD_00.BIN through FORD_020.BIN are included in the iDiag product.

106.    On information and belief, Ford alleges that the files named FORD_00.BIN through FORD_020.BIN are included in the EasyDiag 2.0 product.

107.    On information and belief, Ford alleges that the files named FORD_00.BIN through FORD_020.BIN are included in other products sold by Defendants.

108.    On information and belief, Ford alleges that the 21 files named FORD_00.BIN through FORD_20.BIN may be rendered in a human-readable format by performing a specific series of operations on the data.

109.    The file named FORD_02.BIN comprises multiple columns and rows.

110.    The columns in the file named FORD_02.BIN correspond to and are in the same order as the CALID_VIDQID_REC registration.

111.    Column A7 in the CALID_VIDQID_REC Registration is not distributed by Ford.

36

112.    Column A7 in the CALID_VIDQID_REC registration is found in the file named FORD_02.BIN.

113.    Column A7 in the CALID_VIDQID_REC registration includes fictitious records.

114.    Fictitious records included in column A7 of the CALID_VIDQID_REC registration are copied in the file named FORD_02.BIN.

115.    In Ford's Second Amended Complaint filed *Ford Motor Company et al. v. Autel US Inc., et al.*, Ford alleged that Autel's copying of Ford's CALID_VIDQID_REC file was established by the presence of fictitious entries associated with the terms "TEST" and "DUMMY."  Dkt. No. 28, Pg ID 439.

116.    Launch produced a file titled DiagReadFile.cpp for Ford's review during the Source Code Review.

117.    The file titled DiagReadFile.cpp searches for and excludes records associated with the terms "TEST" and "DUMMY."

118.    Launch used information from the Autel Litigation to hide Launch's acts of infringement and misappropriation and other violations of Ford's rights.

119.    During the Source Code Review, Ford created 21 screen captures (the "Screen Captures").

37

120.    One of the Screen Captures shows the section of the file titled DiagReadFile.cpp that searches for and excludes records associated with the terms "TEST" and "DUMMY."

121.    One of the Screen Captures shows one example of a fictitious record included in Ford's CALID_VIDQID_REC Registration that is also found in the file named FORD_02.BIN.

122.    In a letter dated November 15, 2017, Ford requested that Launch provide copies of the Screen Captures to Ford.

123.    Launch has failed and refused to provide copies of the Screen Captures.

### E.    **Launch's Products Incorporate Ford's MNEMONICS_ENG Registration.**

124.    Launch's products include a copy of Ford's MNEMONICS_ENG Registration.

125.    Ford's IDS software incorporates a file titled MNEMONICS_ENG that includes text displayed to a user of Ford's IDS software.

38

126.    Ford has obtained a copyright registration from the United States
Copyright Office for the contents of the MNEMONICS_ENG file.  A true and
correct copy of the Certificate of Registration is attached hereto as Exhibit M.

127.    Launch's X-431 V product displays text that is identical to specific
entries in Ford's MNEMONICS_ENG file.

128.    Exhibit N provides a side-by-side comparison of three exemplary
screen captures from Launch's X-431 V Product and text from Ford's
MNEMONICS_ENG copyright registration.

129.    The comparison contained in Exhibit N shows that the text displayed
on the X-431 product corresponds identically to specifically identified
"mnemonics" in Ford's MNEMONICS_ENG copyright registration.

130.    Launch provided a file titled EN_TEXT.TXT during the Source Code
Review.

131.    The file titled EN_TEXT.TXT is incorporated into a file titled
USAFORD_EN.GGP.

132.    During the Source Code Review, Ford identified three specific
examples of highly idiosyncratic text that are present with the same frequency in
the file titled EN_TEXT.TXT and Ford's MNEMONCS_ENG Registration.

39

133.   The first example involves references to a "tick" button, which the Ford IDS Software uses to confirm that a user has performed an action.

134.   The "Tick" button used throughout Ford's IDS Software is shown in the lower-right hand corner of Image 13.

Image 13



135.   A search for the term "tick" in the file TEXT_EN.TXT yielded 86 hits, including one hit corresponding to the lengthy entry spanning pages 446-447 in the Mnemonics deposit, which is reproduced in Table 6, below.

40

| Table 6 |
|---|
| If the error occurred several times, refer to the procedure on the Workshop Manual.<br><br>In the event of a reprogramming failure during %%h(PCM) programming operations, the following can be carried out to recover the %%h(PCM) program. This procedure is referred to as the blank %%h(PCM) programming function.\n@cr<br>This procedure is also in the Tech Tips found in the Utilities menu.\n @cr<br>Note: It is important that the following steps be carried out as described.\n\n@cr @cr<br>1. Retrieve the %%h(PCM) part number from the diagnostic tester log (trace).\n@cr<br>2. Begin a new vehicle session; 16-pin, All Except Those Below, **Tick**.\n@cr<br>3. Follow the hook-up instructions but DO NOT TURN IGNITION ON, **Tick**.\n@cr<br>4. This will proceed through the Operation in Progress screen to the No Communication with %%h(PCM)<br>screen, answer NO.\n@cr<br>5. Instructions: Ignition OFF, **Tick**.\n@cr<br>6. Instructions: Ignition ON, do not hit Tick, diagnostic tester should proceed automatically to the screen:<br>%%h(PCM) is Blank. This screen will prompt for the previous session, **Tick**.\n@cr<br>7. Select None of the Above at the end of the list, **Tick**.\n@cr<br>8. The next screen explains entering a %%h(PCM) part number, **Tick**\n@cr<br>9. Highlight the %%h(PCM) part number box, enter the part number from the log file (Step 1), **Tick**.\n@cr<br>10. Answer vehicle model questions if asked, **Tick**.\n@cr<br>11. If asked, answer the question: Is vehicle equipped with a %%h(PATS)?\n@cr<br>12. Instructions: Ignition ON, do not select **Tick**, the diagnostic tester should proceed automatically to the<br>screen indicating: Downloading Data. At this point the diagnostic tester is reprogramming the |

41

%%h(PCM).\n@cr
13. Instructions: Ignition OFF, **Tick**.\n@cr
14. Instructions: Ignition ON. **Tick**.\n@cr
15. Instructions: Ignition OFF, **Tick**.\n@cr
16. If the screen stating that the calibration has been loaded and checked appears, recovery is complete.
Follow the diagnostic tester as instructed. Or,\n@cr
17. If the screen describing the programmable setting requirement appears, **Tick**.\n@cr
18. Instructions: Ignition ON, **Tick**.\n@cr

136.   The Mnemonic shown above in Table 6 is included in the file EN_TEXT.TXT, and includes 14 references to the "Tick" button (*i.e.*, steps 2, 3, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 17, and 18).

137.   None of Launch's products incorporate a "Tick" button.

138.   The other two examples of highly idiosyncratic text identified by Ford during the Source Code Review are shown in the Screen Captures.

139.   Launch's X-431 Pro product includes a file titled USAFORD_EN.GGP.

140.   Launch's X-431 V product includes a file titled USAFORD_EN.GGP.

141.   Launch's iDiag App includes a file titled USAFORD_EN.GGP.

142.   Launch's EasyDiag product includes a file titled USAFORD_EN.GGP.

143.   Launch's Diagun product includes a file titled USAFORD_EN.GGP.

144.   Launch's Creader Professional CRP129 product includes a file titled USAFORD_EN.GGP.

145.   On information and belief, Ford alleges that the file named USAFORD_EN.GGP is included in other products sold by Defendants.

146.   On information and belief, Ford alleges that the USAFORD_EN.GGP may be rendered in a human-readable format by performing a specific series of operations on the data.

147.   On information and belief, Ford alleges that Launch has copied the same file structure used to associate the "mnemonics" used by Ford with text in the MNEMONICS_ENG copyright registration displayed on the screen of Launch's products.

**F.    Launch's Products Incorporate Ford's Trade Secrets**

148.   Ford's IDS Software includes all of the files listed in Table 7.

| Table 7 | |
|---|---|
| HELPSCREEN_REC | CHANGE_REC |
| HELPITEM_REC | DD_GROUP_CON_ARRAY |
| MODULE_GRP_REC | DD_GROUP_REC_CON |
| MODULE_REC | DD_PARAM_GROUP_REC |
| PROTOCOL_REC | DD_PARAM_REC |
| METHOD_REC | PARAM_REC |
| MOD_ST_REC | PARAM_TYPE_REC |
| SECURITY_REC | PARAM_ADDR_REC |
| SECURITYDATA_REC | DMR_REC |
| PROPERTY_REC | CONVERTER_REC |
| MODULE_CHG_ARRAY | CONVERTER_STATE_REC |
| MODULE_CHG_REC | CONVERTER_MAP_REC |

149.    The files listed in Table 7, above, were copied in the files produced by

Launch during the Source Code Review as shown in Table 8, below.

| Table 8 | |
|---|---|
| Ford IDS File Name | Location in Files Produced During the Source Code Review |
| CALID_VIDQID_REC | FORD_02.XML |
| HELPSCREEN_REC | FORD_06.XML, Line 3 |
| HELPITEM_REC | FORD_06.XML, Line 24822 |
| MODULE_GRP_REC | FORD_07.XML, Line 5 |
| MODULE_REC | FORD_07.XML, Line 225 |
| PROTOCOL_REC | FORD_07.XML, Line 26467 |
| METHOD_REC | FORD_07.XML, Line 27716 |
| MOD_ST_REC | FORD_07.XML, Line 37427 |
| SECURITY_REC | FORD_07.XML, Line 38756 |
| SECURITYDATA_REC | FORD_07.XML, Line 40001 |
| PROPERTY_REC | FORD_07.XML, Line 41328 |

44

| MODULE_CHG_ARRAY | FORD_08.XML, Line 4 |
|---|---|
| MODULE_CHG_REC | FORD_08.XML, Line 435 |
| CHANGE_REC | FORD_08.XML, Line 1289 |
| DD_GROUP_CON_ARRAY | FORD_09.XML, Line 5 |
| DD_GROUP_REC_CON | FORD_09.XML, Line 1362 |
| DD_PARAM_GROUP_REC | FORD_09.XML, Line 3803 |
| DD_PARAM_REC | FORD_09.XML, Line 6244 |
| PARAM_REC | FORD_10.XML |
| PARAM_TYPE_REC | FORD_11.XML, Line 5 |
| PARAM_ADDR_REC | FORD_11.XML, Line 83508 |
| DMR_REC | FORD_12.XML |
| CONVERTER_REC | FORD_13.XML, Line 3 |
| CONVERTER_STATE_REC | FORD_13.XML, Line 11088 |
| CONVERTER_MAP_REC | FORD_13.XML, Line 45137 |

150.    The files listed in Table 7, above, constitute trade secrets owned by Ford.

151.    Ford's letter of November 15, 2017, requests that Launch provide copies of the files FORD_06.XML - FORD_13.XML.  Exhibit O.

152.    Launch has failed and refused to provide to Ford copies of the files FORD_06.XML - FORD_13.XML.

153.    Ford exercises reasonable efforts to protect the secrecy of the files listed in Table 7, above, including the use of encryption technology and obfuscation.

45

154.    Many of Ford's vehicles utilize Ford's Passive Anti-Theft System ("PATS"), which restricts access to certain modules and features associated with Ford's vehicles, such as programming keys and controlling a vehicle's anti-lock brake module.

155.    The PATS system can be accessed using "security bytes" and related algorithms.

156.    The "security bytes" and related algorithms constitute Ford's trade secrets.

157.    Ford licenses certain third parties to utilize the "security bytes" and related algorithms associated with Ford's vehicles.  Such licensing arrangements require that the "security bytes" be maintained in strict confidence and outline steps be taken to protect the secrecy of the "security bytes" and related algorithms.

158.    Ford has not licensed Launch USA or Launch China to utilize the "security bytes" and related algorithms.

159.    Launch's products support features requiring access to the "security bytes" and related algorithms, including key reprogramming and control of a vehicle's anti-lock braking module.

160.    Launch China has advertised the ability of its X-431 Pro and X-431

46

Pro 3 products to control the "Anti-theft Key Matching Method," including a video

posted to YouTube demonstrating the specific steps required to "Add Keys To The

PATS System Memory," of a Ford Focus vehicle, as shown below in Image 14.

Image 14



161.    Launch produced a file titled Ford_99.H during the Source Code Review.

162.    The file titled Ford_99.H specifically refers to "ids104" on line 21.

163.    The file titled Ford_99.H specifically refers to "ids100" on line 5596.

164.    On information and belief, Ford alleges that the reference to "ids104" and "ids100" refer to specific versions of Ford's IDS software from which the files listed in Table 8, above, were obtained.

165.    Version 100 of Ford's IDS software was released on April 13, 2016.

166.    Version 104 of Ford's IDS software was released on February 1, 2017.

167.    The files listed in Table 8 and the "security bytes" and related algorithms derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from their disclosure or use.

168.    Ford has taken reasonable steps to maintain the secrecy of the files listed in Table 8 and the "security bytes" and related algorithms by utilizing encryption and obfuscation technologies, and by imposing confidentiality obligations upon all parties to which the files listed in Table 8 and the "security bytes" and related algorithms are disclosed.

48

169.    Defendants misappropriated Ford's trade secrets and utilized Ford's trade secrets to create products sold in direct competition with Ford.

**G.    Launch Improperly Obtained Access to Ford's Confidential and Proprietary Information.**

170.    Launch has in its possession a program named PARSEALL.EXE, which is designed to obtain unauthorized access to the FFData file compilations of data within the IDS system.

171.    On information and belief, Ford alleges that Launch created the program named PARSEALL.EXE.

172.    On October 18, 2013, Launch China's Executive Vice-President, James Jiang, wrote to counsel for Ford and Mr. Ieon Chen and stated that Launch would provide information to show that one of Launch's competitors was violating Ford's intellectual property by extracting information from Ford's IDS Software. A true and correct copy of Mr. Jiang's message is attached hereto as Exhibit P.

173.    Mr. Jiang's name, as stated in the email, is "蒋仕文James.Jiang."

174.    On December 16, 2013, Mr. Ieon Chen forwarded a document in "its original Chinese format" from his "overseas contact" describing the function of the

PARSEALL.EXE program.  A true and correct copy of Mr. Ieon Chen's email dated December 16, 2013 is attached hereto as Exhibit Q.

175.    A true and correct copy of the document "in its original Chinese format" from Mr. Chen's "overseas contact" is attached hereto as Exhibit R.

176.    The "author" of the document attached hereto as Exhibit R, according to the metadata included in the file, is shown in Image 15.



Image 15

177.   Mr. James Jiang, as shown by the Chinese characters 蒋仕文 (i.e., the same characters appearing in the signature block of Mr. Jiang's email message), is the author of the document forwarded by Ieon Chen describing the operation of PARSEALL.EXE.

178.   The document attached as Exhibit Q describes the process by which the PARSEALL.EXE program accesses proprietary and confidential information stored in Ford's IDS Software.

179.   On information and belief, Ford alleges that Launch used the PARSEALL.EXE tool to extract data from Ford's IDS software and copied the extracted data onto various products sold by Launch.

180.   In the alternative, Ford alleges on information and belief that Launch reverse engineered Ford's IDS software to extract confidential and proprietary information.

**H.    Launch has Breached the End-User License Agreement Associated with Ford's IDS Software.**

181.   The End-User License Agreement ("EULA") associated with Ford's IDS Software expressly prohibits reverse engineering.  A copy of the EULA for Ford's IDS Software is attached hereto as Exhibit R.

52

182.    The EULA, which must be accepted by a user prior to installation and

use of the IDS Software, provides in pertinent part:

LIMITATION ON REVERSE ENGINEERING, DECOMPILATION, AND
DISASSEMBLY.

YOU may not reverse engineer, decompile, or disassemble the Product,
except and only to the extent that it is expressly permitted by applicable law
not withstanding this limitation.

183.    In addition to explicitly prohibiting reverse engineering, the EULA

states: "[a]n End-User is defined as a repairer engaged in the direct repair of the

vehicle. An End-User cannot be a diagnostic toolmaker."

184.    Launch is a "diagnostic toolmaker."

185.    In spite of its status as a "diagnostic toolmaker," Launch acquired and

utilized the IDS Software.

186.    Ford alleges that Launch engaged in reverse engineering of Ford's

IDS Software in violation of the terms of the EULA prohibiting reverse

engineering.

## **FIRST CLAIM FOR RELIEF**
(Federal Trademark Infringement and Counterfeiting under 15 U.S.C. § 1114)

187.    The allegations set forth above are incorporated herein by this

reference.

53

188.   The Ford Marks are inherently distinctive, are arbitrary and fanciful, and have acquired secondary meaning.  The public associates the Ford Marks exclusively with Ford and Ford's vehicles, products, and services.  This is a result of the inherent distinctiveness of the Ford Marks and of distinctiveness acquired through extensive advertising, sales, and use in commerce throughout the United States and beyond in connection with products and services bearing or using the Ford Marks.

189.   Despite Ford's well-established rights in the Ford Marks, Launch uses and continues to use, without Ford's authorization, spurious designations that are identical to, or substantially indistinguishable from, the Ford Marks.

190.   Launch has acted with knowledge of Ford's ownership of the Ford Marks and with deliberate intention to unfairly benefit from the incalculable goodwill inherent in the Ford Marks.

191.   Launch's acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

192.   Launch's misappropriation of the Ford Marks has been, and continues to be, done with the intent to cause confusion and mistake, and to deceive consumers concerning the source and/or sponsorship of Launch's products and

54

services.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

193.    Launch's misappropriation of the Ford Marks is likely to cause confusion in the marketplace and among purchasers of diagnostic tools.

194.    As a direct and proximate result of Launch's conduct, Ford has suffered irreparable harm to the Ford Marks.  Unless Launch is restrained from further infringement of the Ford Marks, Ford will continue to be irreparably harmed.

195.    Ford has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Launch's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

196.    As a direct and proximate result of Launch's conduct, Ford is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, a disgorgement, of all revenues and/or profits wrongfully derived by Launch from its infringement of the Ford Marks, and Ford's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

197.    In the alternative, Ford is entitled to elect statutory damages under 17 U.S.C. § 1117(c).

55

## SECOND CLAIM FOR RELIEF
(False Designation of Origin under 15 U.S.C. § 1125(a))

198.    The allegations set forth above are incorporated herein by this reference.

199.    Launch has used and is continuing to use in commerce false and misleading designations of origin concerning Launch's products and services and Ford's products and services.

200.    Launch's false designations of origin have caused actual confusion and will continue to cause actual or likely confusion regarding the affiliation, connection, or association of Launch's products and services with Ford or as to the origin, sponsorship, or approval of Launch's products and services.

201.    Launch has caused and will continue to cause its false and misleading designations of origin and descriptions of fact to enter interstate commerce.

202.    Ford has been or is likely to be injured as a result of the false and misleading designations of origin and descriptions of fact, either by direct diversion of sales from itself to Launch or by a lessening of the goodwill associated with Ford's products and services.

56

203.    Launch's acts constitute false designations of the origin and/or sponsorship in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

204.    By reason of Launch's actions, Ford has suffered irreparable harm to the Ford Marks.  Unless Launch is restrained from its actions, Ford will continue to be irreparably harmed.

205.    Ford has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Launch's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

206.    As a direct and proximate result of Launch's conduct, Ford is entitled to damages, treble damages, statutory damages, and the equitable remedy of an accounting for, a disgorgement of, all revenues and/or profits wrongfully derived by Launch from its false designations of origins, and Ford's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
(Unfair Competition under Michigan Law)

207.    The allegations set forth above are incorporated herein by this reference.

208.    Launch simulated the Ford Marks and substituted Launch's products and services for those of Ford, thereby deceiving and misleading the public.

209.    Launch's actions as described above constitute unfair competition as a matter of Michigan common law.

210.    As a result of Launch's conduct, Ford will continue to suffer damage to Ford's reputation and loss of business because of consumer confusion as to the origin, sponsorship, approval, nature, characteristics, or qualities of Launch's products and services.

211.    Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Launch's actions.

212.    Ford has no adequate remedy at law for Launch's unfair competition.

213.    Ford is entitled to damages in an amount to be proven at trial, as well as Ford's attorneys' fees and costs.

## <u>FOURTH CLAIM FOR RELIEF</u>
(Violation of Michigan Uniform Trade Practices Act, M.C.L. § 445.903)

214.    The allegations set forth above are incorporated herein by this reference.

215.    Launch's above-described acts constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, in violation of Michigan's Uniform Trade Practices Act, M.C.L. § 445.903, including, but not limited to:

216.    Causing a probability of confusion or misunderstanding as to the source, sponsorship, or approval of Launch's products and services;

217.    Using deceptive representations in connection with Launch's products or services;

218.    Representing that Launch's products or services have sponsorship, approval, or characteristics they do not have, including Ford's sponsorship or approval;

219.    Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction; and

220.    Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

221.    Ford will continue to suffer damage as a result of Launch's unfair, unconscionable, or deceptive methods, acts, or practices.

59

222.    Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Launch's actions.

223.    Ford has no adequate remedy at law for Launch's violations of the Michigan Uniform Trade Practices Act.

224.    Ford is entitled to damages in an amount to be proven at trial as well as Ford's attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Trademark Dilution)

225.    The FORD®, FORD OVAL®, and LINCOLN STAR® trademarks are owned by Ford and are famous as defined by 15 U.S.C. § 1125(c)(2), in that each mark is widely recognized by the general consuming public as identifying goods or services having originated from Ford.

226.    Launch's use and appropriation of the FORD®, FORD OVAL®, and LINCOLN STAR® trademarks has caused and continues to cause harm to the distinctive quality of the FORD®, FORD OVAL®, and LINCOLN STAR® marks by lessening the capacity of the marks to identify and distinguish Ford's goods and services from those of others.

60

227.    Launch's actions constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

228.    Launch will continue, unless enjoined, to cause irreparable harm and injury to the goodwill and reputation of Ford.

229.    As a direct and proximate result of Launch's wrongful acts, Ford has also suffered pecuniary damages in an amount to be determined at trial.

230.    On information and belief, Launch willfully intended to trade on Ford's reputation and/or to cause dilution of Ford's famous marks.

231.    Ford is therefore entitled to an injunction, in addition to the remedies in sections 35(a) and 36 of the Lanham Act, including treble profits and/or damages, attorney's fees, and costs.

### SIXTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets)

232.    The allegations set forth above are incorporated herein by this reference.

233.    Launch has acquired certain trade secrets belonging to Ford.

234.    Launch knew, or had reason to know, that the trade secrets were acquired by improper means.

61

235.   Launch has knowingly and intentionally used Ford's trade secrets without Ford's permission.

236.   Launch's actions constitute misappropriation of Ford's trade secrets and should be enjoined under M.C.L. § 445.1903(1).

237.   Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Launch's actions.

238.   Ford has no adequate remedy at law for Launch's violations of Michigan Law.

239.   Ford is entitled to damages in an amount to be proven at trial as well as Ford's attorneys' fees and costs pursuant to M.C.L. § 445.1904.

240.   Ford is entitled to an order from this Court preserving Ford's trade secrets pursuant to M.C.L. § 445.1906.

## SEVENTH CLAIM FOR RELIEF
### (MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. §§ 1836 and 1837)

241.   The allegations set forth above are incorporated herein by this reference.

242. Version 104 of Ford's IDS Software was first released after the effective date of the Defense of Trade Secrets Act, 18 U.S.C. § 1836, et seq.

243. Launch USA is an organization organized under the laws of a State under 18 U.S.C. § 1837(a).

244. The acquisition of licenses for the IDS Software was conducted in furtherance of the theft of Ford's trade secrets contained in the IDS Software under 18 U.S.C. § 1837(b).

245. Launch China direct or participated in the acquisition of Ford's IDS Software.

246. Ford's IDS Software is intended for use in interstate commerce, and Ford has licensed use of Ford's IDS Software throughout the United States.

247. Defendants' misappropriation and misconduct was willful and malicious, as evidenced by the fact that James Jiang contacted Ford and offered evidence showing that one of Launch's competitors was violating Ford's intellectual property by extracting information from Ford's IDS Software, and that such conduct provided Launch's competitor an unfair advantage in the market.

63

248.    Ford has suffered damage as a direct and proximate result of Defendants' misappropriation of Ford's trade secrets, including without limitation, loss of sales and profits it would have earned but for Defendant's actions.

249.    Defendants' use of Ford's trade secrets, without express or implied consent, in connection with Defendants' product Loon is ongoing. Defendants' continuing use of Ford's trade secrets caused and continues to cause irreparable harm to Ford for which Ford has no adequate remedy at law.

250.    An injunction prohibiting Defendants from further use of Ford's trade secrets is necessary to provide Ford complete relief.

## EIGHTH CLAIM FOR RELIEF
(Copyright Infringement under 17 U.S.C. §§ 101 et seq.)

251.    The allegations set forth above are incorporated herein by this reference.

252.    Launch has intentionally and willfully copied Ford's proprietary CALID_VIDQID_REC data and the contents of Ford's copyrighted MNEMONICS_ENG file.  Such copying infringes upon Ford's copyrights.

253.    Unless Launch is enjoined, Launch will continue to infringe upon Ford's copyrights.

64

254.   Launch's copying has caused Ford to lose substantial revenues.

255.   As a direct result of such copyright infringement, Ford has sustained and will continue to sustain, substantial injury, loss, and damages in an amount exceeding $1,000,000.00 and as proven at trial.

256.   Ford is entitled to a permanent injunction restraining Launch, its officers, directors, agents, employees, representatives, and all persons acting in concert with them from engaging in further acts of copyright infringement.

257.   Ford is further entitled to recover from Launch the gains, profits and advantages Launch has obtained as a result of its acts of copyright infringement. Ford is at present unable to ascertain the full extent of the gains, profits and advantages Launch has obtained by reason of its acts of copyright infringement, but Ford is informed and believes, and on that basis alleges, that Launch obtained such gains, profits and advantages in an amount exceeding $1,000,000.00.

## NINTH CLAIM FOR RELIEF
### (Breach of Contract)

258.   The allegations set forth above are incorporated herein by this reference.

259.    The terms of the EULA attached hereto as Exhibit S must be accepted by users prior to installation and use of Ford's IDS Software.

260.    The EULA prohibits reverse engineering, decompilation, and disassembly.

261.    Launch's reverse engineering of Ford's IDS Software constitutes a violation of the EULA.

262.    The EULA states that "[a]n End-User is defined as a repairer engaged in the direct repair of the vehicle," and further states that "[a]n End-User cannot be a diagnostic toolmaker."

263.    Launch is "a diagnostic toolmaker," and as such, Launch is not an end-user eligible to use Ford's IDS Software.

264.    Launch, as a diagnostic toolmaker, violated the terms of the EULA by installing and using Ford's IDS Software.

265.    Launch signed the Cease and Desist Agreement committing to "cease and desist all use of Ford's trademarks…."

266.    Launch continued to use Ford's trademarks after executing the Cease and Desist agreement.

267.    As a direct and proximate result of Launch's breach of the EULA and the Cease and Desist Agreement, Launch has caused damage and will continue to cause damage to Ford in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Ford prays for judgment against Launch as follows:

1.    Under all claims for relief, that a preliminary and permanent injunction be issued enjoining Launch, its employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)    further infringing upon Ford's copyright, or printing, publishing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products not authorized by Ford bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of Ford's copyrighted materials;

(b)    imitating, copying, or making unauthorized use of the Ford Marks, including, but not limited to, using the name or marks FORD®, the FORD

67

OVAL®, and the LINCOLN STAR®, or any confusingly similar variations

thereof, in any manner in the United States;

(c)    importing, manufacturing, producing, distributing, circulating, selling,

offering for sale, advertising, promoting, or displaying in the United States any

service or product using any simulation, reproduction, counterfeit, copy, or

colorable imitation of any or all of the Ford Marks;

(d)    using in the United States any simulation, reproduction, counterfeit,

copy, or colorable imitation of the Ford Marks, or any confusingly similar

variations thereof, in connection with the promotion, advertisement, display, sale,

offering for sale, manufacture, production, circulation or distribution of any

product or service;

(e)    using in the United States any false designation of origin or false

description (including, without limitation, any letters or symbols constituting the

Ford Marks), or performing any act, which can, or is likely to, lead members of the

trade or public to believe that any service or product manufactured, distributed, or

sold by Launch is in any manner associated or connected with Ford, or is sold,

manufactured, licensed, sponsored, approved, or authorized by Ford;

(f)    transferring, consigning, selling, shipping, or otherwise moving in the

United States any goods, packaging, or other materials in Launch's possession,

custody, or control bearing a design or mark substantially identical to any or all of

the Ford Marks or violating Ford's copyright;

(g)    engaging in any false advertising or other activity in the United States

constituting unfair competition with Ford with respect to the Ford Marks or

constituting an infringement of the Ford Marks, or of Ford's rights in, or to use or

exploit, the Ford Marks;

(h)    instructing, assisting, aiding, or abetting any other person or business

entity in engaging in or performing any of the activities referred to in

subparagraphs (a) through (g) above.

2.    For an order directing that Launch recall and deliver for destruction

all products, labels, tags, signs, prints, packages, videos, advertisements, and other

materials in its possession or under its control, bearing or using the Ford Marks or

any simulation, reproduction, counterfeit, copy or colorable imitation thereof,

pursuant to 15 U.S.C. § 1118.

3.    For an order directing Launch to deliver for destruction all

unauthorized products, labels, signs, transparencies, electronic files, photographs,

images, and advertisements in Launch's possession or under Launch's control

bearing Ford's copyrighted works or any simulation, reproduction, counterfeit,

copy, or colorable imitation thereof, and all plates, molds, matrices, programs, or

other means of making the same.

4.      For an order directing such other relief as the Court may deem

appropriate to prevent the trade and public from deriving the erroneous impression

that any service or product manufactured, sold, or otherwise circulated or promoted

by Launch is authorized by Ford or related in any way to Ford's products or

services.

5.      For an order requiring Launch to pay Ford such damages as Ford has

sustained as a consequence of Launch's infringement of Ford's copyright and to

account for all gains, profits, and advantages derived by Launch by the

infringement of Ford's copyright or as an alternative to recovering actual damages

and any additional profits under the Copyright Act, ordering Launch to pay Ford

the statutory damages thereunder for Ford's copyrighted works infringed by

Launch.

6.    For an order awarding Ford for Ford's copyrighted works infringed by Launch and an increased award of statutory damages for willful infringement pursuant to 17 U.S.C. § 504.

7.    For an order that Ford recover the costs of this action together with reasonable attorneys' fees, investigators' fees, and pre-judgment interest pursuant to 17 U.S.C. § 505.

8.    For an order from this Court preserving Ford's trade secrets pursuant to M.C.L. § 445.1906 and enjoining the misappropriation of Ford's trade secrets pursuant to M.C.L. § 445.1903(1).

9.    For an order directing that Launch file with the Court and serve upon Ford's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Launch has complied with the above.

10.    For an order requiring Launch to file with the Court and provide to Ford an equitable accounting and disgorgement of all revenues and/or profits wrongfully realized by Launch.

71

11.     For an award of Ford's costs and disbursements incurred in this action, including Ford's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117 and Michigan law, including M.C.L. § 445.911(2).

12.      For an award of actual damages pursuant to 15 U.S.C. § 1117, M.C.L. § 445.911(2), and M.C.L. § 445.1904.

13.     For an award of Ford's damages trebled or, alternatively, an award of Launch's wrongful profits from the United States trebled, whichever is greater, plus Ford's costs and attorney's fees, pursuant to 15 U.S.C. § 1117.

14.     In the alternative, for an award of statutory damages under 17 U.S.C. § 1117(c).

15.     For an order that Defendants account for and pay to Ford all damages caused by the misappropriation of Ford's trade secrets which, pursuant to 18 U.S.C. § 1836(b)(3)(B), including actual loss and any unjust enrichment not addressed in computing damages for actual loss, or a reasonable royalty in lieu of damages measured by another method.

16.     For an order finding that Defendants' misappropriation of Ford's trade secrets was willful and malicious, and for exemplary damages pursuant to 18

72

U.S.C. § 1836(b)(3)(C), and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

17.    For an award of interest, including pre-judgment interest, on the foregoing sums.

18.    For an order directing that this court retain jurisdiction of this action for the purpose of enabling Ford to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

19.    For such other and further relief as the Court may deem just and proper.

Dated:  November 30, 2017

Respectfully submitted,

GREGORY D. PHILLIPS
JARED L. CHERRY
**PHILLIPS RYTHER & WINCHESTER**
124 South 600 East
Salt Lake City, Utah 84102
Tel:   (801) 935-4935; Fax:      (801) 935-4936

By:   /s/ Gregory D. Phillips
        *Attorneys for Plaintiff*
           73