## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**FORD MOTOR COMPANY**, a
Delaware corporation, and **FORD
GLOBAL TECHNOLOGIES, LLC**, a
Delaware Limited Liability Company,

                 Plaintiffs,

v.

**LAUNCH TECH CO. LTD.**, a
Chinese corporation, **LAUNCH TECH
(USA), INC.**, a California corporation

                 Defendants.

Civil Action No.
2:17-cv-12906-NGE-DRG

Honorable Nancy G. Edmunds

Magistrate Judge David R. Grand

---

Deanna Kunze
NIXON PEABODY LLP
70 West Madison, Suite 3500
Chicago, IL, 60602-4224
(312) 977-4400
dkunze@nixonpeabody.com

Attorneys for Defendants Launch Tech
Co., Ltd.

---

### MOTION OF LAUNCH TECH CO., LTD. FOR DISMISSAL
### PURSUANT TO RULES 12(b)(2), 12(b)(3) and 12(b)(6)
### OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant Launch China Co., Ltd. ("Launch China"), hereby moves this Court for dismissal of the claims asserted by Plaintiffs Ford Motor Company, Ltd. and Ford Global Technologies, LLC, (collectively, "Plaintiffs" or "Ford"). This motion is made on the following grounds:

First, Launch China is not subject to personal jurisdiction in this Court. Thus, the claims against it should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Second, the Eastern District of Michigan is not a proper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Thus, this Court is not the proper venue to hear Plaintiffs' claims.

Finally, Plaintiffs' pleading does not contain factual allegations sufficient to state a plausible claim against Launch China under any of the legal theories pleaded. Therefore, Plaintiffs' claims against Launch China should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Date: December 21, 2017

Respectfully submitted,

By: */s/ Deanna Kunze*
Deanna Kunze
Illinois State Bar No. 6287513
**Nixon Peabody LLP**
70 West Madison Street, Suite 3500
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405
dkunze@nixonpeabody.com

2

Jeffrey L. Hudson (P31808)
**Dean & Fulkerson, P.C.**
801 W. Big Beaver Rd., 5th Floor
Troy, Michigan 48084
Tel: (248) 362-1300
jhudson@dflaw.com

ATTORNEYS FOR DEFENDANTS
LAUNCH TECH CO., LTD.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**FORD MOTOR COMPANY**, a
Delaware corporation, and **FORD
GLOBAL TECHNOLOGIES, LLC**, a
Delaware Limited Liability Company,

              Plaintiffs,

v.

**LAUNCH TECH CO. LTD.**, a
Chinese corporation, **LAUNCH TECH
(USA), INC.**, a California corporation

              Defendants.

Civil Action No.
2:17-cv-12906-NGE-DRG

Honorable Nancy G. Edmunds

Magistrate Judge David R. Grand

---

Deanna Kunze
NIXON PEABODY LLP
70 West Madison, Suite 3500
Chicago, IL, 60602-4224
(312) 977-4400
dkunze@nixonpeabody.com

Attorneys for Defendants Launch Tech
Co., Ltd.

---

## BRIEF IN SUPPORT OF MOTION OF LAUNCH TECH CO., LTD.
## FOR DISMISSAL PURSUANT TO RULES 12(b)(2), 12(b)(3) and 12(b)(6)
## <u>OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

THE RELEVANT FACTS…………………………………………………...1

ARGUMENT…………………………………………………………………5

    A.    Launch China Is Not Subject to Personal Jurisdiction in Michigan….5

        1.    The Court Lacks General Jurisdiction Over Launch China…...6

        2.    The Court Lacks Specific Jurisdiction Over Launch China…...8

    B.    The Eastern District of Michigan Is Not a Proper Venue…………...12

    C.    This Court Should Dismiss the Claims Aginst Launch China Pursuant to Rule 12(b)(6)……………………………………………………...14

        1.    Claim 1: Trademark Infringement and Counterfeiting (15 U.S.C. §§1114, 1116)…………………………………………...14

        2.    Claim 2: False Designation of Origin (15 U.S.C. § 1125(a))……………………………………………….........17

        3.    Claim 3:  Unfair Competition………………………………...18

        4.    Claim 4:  Violation of Michigan Consumer Protection Act (M.C.L.  § 445.903)…………………………………………19

        6.    Claim 5:  Dilution (15 U.S.C. § 1125(c)(2))…………………20

        7.    Claims 6 and 7:  Misappropriation of Trade Secrets (M.C.L. § 445.1903(1) and 18 U.S.C. §§ 1836-1837)…………………..21

        7.    Claim 8:  Copyright Infringement…………………………25

        8.    Claim 9:  Breach of Contract………………………………27

CONCLUSION…………………………………………………………...28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs. GMBH v. Guidewire Software Inc.*,
  581 F. Supp.2d 654 (D. Del. 2008)....................................................24

*Amphion Inc. v. Buckeye Elec. Co.*,
  285 F. Supp. 2d. 943 (E.D. Mich. 2003) ...........................................12

*Aristech Chemical Int'l Ltd. v. Acrylic Fabricators Ltd.*,
  138 F.3d 624 (6th Cir. 1998) ..............................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................1, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................1, 14, 21

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006) ...........................................................9

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
  371 F.3d 883 (6th Cir. 2004) .............................................................25

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..............................................................................8

*CBC Cos., Inc. v. Equifax, Inc.*,
  561 F.3d 569 (6th Cir. 2009) .............................................................23

*Co. v. American Way Serv. Corp.*,
  943 F.2d 595 (6th Cir. 1991) .............................................................19

*Coffee Beanery, Ltd. v. Powell*,
  932 F. Supp. 980 (E.D. Mich. 1996) ...................................................8

*Cole v. Mileti*,
  133 F.3d 433 (6th Cir. 1998) ...............................................................7

*CompuServe, Inc. v. Patterson*,
  89 F.3d 1257 (6th Cir. 1996) ...........................................................6, 8

i

*Dolce & Gabbana Trademarks S.r.L. v. TXT Enterprises, Inc.*,
    No. 14-cv-00855, 2016 WL 8202008 (N.D. Ohio Mar. 9, 2016) ...............10, 11

*Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*,
    838 F. Supp. 2d 607 (E.D. Mich. 2012) ...........................................................26

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
    807 F.Supp.2d 732 (N.D. Ill. 2011) ....................................................................9

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F.3d 915 (6th Cir. 2003) ...............................................................................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)...............................................................................................7

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) ...............................................................................15

*Johnson v. Jones*,
    149 F.3d 494 (6th Cir. 1998) ...............................................................................17

*Kellogg Co. v. Exxon Corp.*,
    209 F.3d 562 (6th Cir. 2000) ...............................................................................20

*Kerry Steel, Inc. v. Paragon Industries, Inc.*,
    106 F.3d 147 (6th Cir. 1997) .................................................................................8

*Knights Armament Co. v. Optical Sys. Tech.*,
    568 F. Supp. 2d 1369 (M.D. Fla. 2008)..............................................................23

*LAK, Inc. v. Deer Creek Enter.*,
    885 F.2d 1293 (6th Cir. 1989) ...................................................................5, 7, 12

*Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*,
    471 F. Supp. 2d 822 (E.D. Mich. 2007) .............................................................18

*Medafor, Inc. v. Starch Med. Inc.*,
    2009 WL 2163580 (D. Minn. July 16, 2009) ......................................................23

*Microsoft Corp. v. Compusource Distribs, Inc.*,
    115 F. Supp. 2d 800 (E.D. Mich. 2000) .............................................................19

*Mike's Train House, Inc. v. Lionel,*
 LLC, 472 F.3d 398 (6th Cir. 2006).....................................................................21

*Mitcham v. Detroit,*
 355 Mich. 182 (1959) ........................................................................................19

*Niemi v. NHK Spring Co. Ltd.,*
 276 F. Supp. 2d 717 (E.D. Mich. 2003) ............................................................11

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
 134 S. Ct. 1962 (2014).......................................................................................25

*Russell v. Wall Wire Products,*
 346 Mich. 581 (1956) ........................................................................................24

*SFS Check, LLC v. First Bank of Del.,*
 990 F. Supp. 2d 762 (E.D. Mich. 2013) ..........................................................5, 6

*In re Sofamor Danek Group, Inc.,*
 123 F.3d 394 (6th Cir. 1997) .............................................................................14

*Southern Mach. Co. v. Mohasco Indus. Inc.,*
 401 F.2d 374 (6th Cir. 1968) ..........................................................................7, 12

*TC Heartland LLC v. Kraft Foods Group Brands LLC,*
 137 S.Ct. 1514 (2017).........................................................................................13

*Tobin v. Astra Pharm. Prod., Inc.,*
 993 F.2d 528 (6th Cir. 1993) ...............................................................................5

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue*
 *Shield,*
 552 F.3d 430 (6th Cir. 2008) .........................................................................22, 23

*Transportation Commc'ns Int'l Unon v. Sultan,*
 187 F. Supp. 2d 880 (E.D. Mich. 2002) .............................................................11

*Veteran Med. Prods., Inc. v. Bionix Dev. Corp.,*
 2008 WL 696546 (W.D. Mich. March 13, 2008)...............................................22

*Wilcom Pts. Ltd. v. Endless Visions,*
 128 F. Supp. 2d 1027 (E.D. Mich. 1998) ..........................................................19

*Youn v. Track, Inc.*,
   324 F.3d 409 (6th Cir. 2003) ...............................................................................11

**Statutes**

15 U.S.C. § 1055 ........................................................................................................9

15 U.S.C. § 1114 ................................................................................................passim

15 U.S.C. § 1116 ......................................................................................................15

15 U.S.C. §1125 .................................................................................................passim

17 U.S.C. §101 ..........................................................................................................2

17 U.S.C. § 507(b) ...................................................................................................25

18 U.S.C. §1836 ..................................................................................................2, 24

18 U.S.C. § 1837 .................................................................................................2, 21

28 U.S.C. §1400(a) ...........................................................................................12, 13

28 U.S.C. § 1391 ...............................................................................................12, 13

M.C.L. § 429.42 ...........................................................................................2, 18, 19

M.C.L. § 445.903 ...............................................................................................2, 19

M.C.L. § 445.1902 ..................................................................................................21

M.C.L. §445.1903 ..............................................................................................2, 21

M.C.L. §600.711 ........................................................................................................6

**Other Authorities**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) .....................................................2, 5

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3) .............................................2, 12, 13

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ................................................passim

iv

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.    Is Launch Tech Co. Ltd. subject to personal jurisdiction in this forum despite its status as a Chinese company that makes no sales and does no business in Michigan?

2.    Is the Eastern District of Michigan the proper venue in this action when personal jurisdiction does not exist over Launch Tech Co. Ltd. in Michigan?

3.    Do Plaintiffs plead sufficient factual allegations to state a plausible claim against Launch Tech Co. Ltd. under any of the legal theories pleaded, particularly where factual allegations are conflated between the two defendants; and, if not, should the claims against Launch Tech Co. Ltd. be dismissed with or without prejudice?

## <u>MOST CONTROLLING AUTHORITIES</u>

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3)

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## I.    INTRODUCTION

Ford Motor Company and Ford Global Technologies, LLC, (collectively, "Plaintiffs" or "Ford"), allege that Launch Tech Co., Ltd. ("Launch China") and Launch Tech, Inc. ("Launch USA") (collectively, "Defendants"), copied certain aspects of Ford's copyright-protected electronic data, infringed registered trademarks of Ford, and misappropriated other related intellectual property, along with other competition claims. These claims have no merit.

First, Launch China has no substantive contacts with this forum. This Court cannot properly exercise personal jurisdiction over Launch China. Second, it would be impractical to hale Launch China into this Court. This Court is not the proper venue for this action. Third, Plaintiffs have not plausibly nor credibly pled any of their allegations against Launch China, and do not satisfy the "plausibility" requirement in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, the Complaint fails to meet the controlling standards for pleading the claims Plaintiffs purport to assert and amendment of such claims would be futile as there are no facts to support Plaintiffs' claims. Dismissal of each claim with prejudice is therefore warranted.

## II.    THE RELEVANT FACTS

Plaintiffs filed their initial complaint in this action against Defendants on September 1, 2017 (Dkt. 1), and their First Amended Complaint ("FAC") (Dkt. 16)

on November 30, 2017, which alleges: Trademark Infringement and Counterfeiting (15 U.S.C. §§ 1114, 1116), False Designation of Origin (15 U.S.C. §1125(a)), Violation of Michigan Consumer Protection Act (M.C.L. §445.903), Common Law Unfair Competition (M.C.L. §429.42), Trademark Dilution (15 U.S.C. §1125(c)(2)), Misappropriation of Trade Secrets (M.C.L. §445.1903(1); 18 U.S.C. §§ 1836, 1837), Copyright Infringement (17 U.S.C. §101), and Breach of Contract.

Launch China is a corporation organized under the laws of China and with its principal place of business in Shenzhen, China. (Declaration of James Jiang ¶ 2.) Launch China manufactures and sells automotive diagnostic tools that are used for, among other things, diagnosing and troubleshooting problems with the electronic systems and components of automobiles. (*Id*. ¶ 3.) The products at issue in the Complaint are sold under the "Launch" trademarks. (*Id*.) Rather than representing that "it is engaged in interstate commerce in the United States using [the Launch] trademarks," as alleged in the Amended Complaint, Launch China's representative declared that "the applicant or the applicant's related company *or licensee* is using the mark in commerce…" (FAC ¶¶ 32-34; *see, e.g.*, Ex. A, Trademark Application Serial Number 86/649,604 for LAUNCH mark, registered as No. 4,881,277, and available to the public through the USPTO's TSDR system.)

Launch China does not sell any products in the United States. (Jiang Decl., ¶4.) Rather, Launch China sells its Launch-branded products to Launch USA, and

2

Launch USA takes title to those goods upon shipment in China.  (*Id*.)  Launch China does not own any portion of the shares of Launch USA nor does Launch China control Launch USA in any manner.  (*Id*. ¶5.)  As evidence of this fact, the companies do not share any officers, directors or employees.  (*Id.*)  Moreover, Launch China's email address jiangbo.zhang@cnlaunch.com is associated with an account registered through PayPal China, which requires that all disputes be resolved by a court (or by arbitration) in Singapore.  (*Id*. ¶12.)  Put plainly, the only relationship between Launch USA and Launch China is that of buyer and seller in China, and as licensee and licensor to the Launch trademarks in the United States.  (*Id*. ¶6.)

Plaintiffs allege that "Launch Tech" is a member of the Equipment and Tools Institute ("ETI"), a trade group that allows members from any location to access information about emerging automotive industry trends, the current issues in the industry, and to network with fellow members.  (FAC ¶12.)  Launch China, however, has no membership in ETI.  (*Id*. ¶7.)  Launch China receives no information or other benefit from Launch USA's ETI membership.  (*Id*.)

Any Launch-brand products sold in the United States are done so by Launch USA.  (*Id*. ¶8.)  Launch USA deals directly with purchasers and end-users of the Launch-brand products in the United States, including providing services relating to issues such as repairs, warranty services, and software updates.  (*Id*.)  Launch

3

USA, however, has no authority, legal or otherwise, to undertake obligations or otherwise conduct business on behalf of Launch China. (*Id.* ¶9.)

Neither the X-431 V product nor the X-431 Diagun product referenced in the Amended Complaint are sold to Launch USA. (*Id.* ¶10.) Launch China discontinued production of the Diagun product in 2012 due to counterfeiting, and as a result, Launch USA has not sold the X-431 Diagun product since then. (*Id.*) The X-431 V product has never been sold to Launch USA. (*Id.*)

Additionally, Launch China's website, www.x431.com, is passive. (*Id.* ¶11.) In fact, the website's primary purpose simply is to provide information on Launch-branded products and provide links to the appropriate distributors based on country. (*Id.*) Users of some Launch-branded products may register those products at the website; however, Launch China collects no address information or other geographic information. (*Id.*) Launch China conducts no sales activity or other business through this website, which is hosted entirely in China. (*Id.*)

Launch China also does not avail itself to jurisdiction in Michigan due to its "easydiag app" as it is only available through third-party app stores after a product is purchased from Launch USA. (*Id.* ¶13.) Users of the easydiag app do not enter their mailing address, nor does Launch China market to any easydiag user. (*Id.*) In fact, Launch China does not promote its easydiag app in the United States; Launch China simply makes it available after the purchase of Launch-brand

4

products from Launch USA.  (*Id.*)

Launch China conducts absolutely no business in Michigan and thus, does not consent to the jurisdiction of any court in Michigan.  (*Id.* ¶14.)  Launch China does not sell or offer to sell any products in Michigan.  (*Id.*)  It has no physical offices nor any employees located in Michigan (or in the United States at all).  (*Id.*)  Likewise, it has no bank accounts in Michigan.  (*Id.*)  Finally, Launch China has never entered into any contracts with any person or entities located in Michigan.  (*Id.*)  Given that Launch China has no presence or, even, any contact with Michigan, and given that the only products at issue in this case are not marketed or sold in Michigan by Launch China, forcing Launch China to litigate here would be unduly burdensome, expensive and unreasonable.

## III.   ARGUMENT

## A.   Launch China Is Not Subject to Personal Jurisdiction in Michigan.

Motions to dismiss for lack of personal jurisdiction are governed by Rule 12(b)(2).  When a nonresident defendant moves to dismiss the case for lack of personal jurisdiction, the burden is on the plaintiff to set forth specific facts showing the court has jurisdiction over that defendant.  *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1299 (6th Cir. 1989); *see also SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 769 (E.D. Mich. 2013); *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993).  Dismissal is appropriate if the

plaintiff fails to set out a prima facie case for jurisdiction. *SFS Check*, 990 F. Supp. 2d at 769.

Under Michigan law, a court's exercise of jurisdiction can consist of either general jurisdiction or specific jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Plaintiffs do not specify upon which type of jurisdiction they rely. Neither type of jurisdiction, however, exists here.

### 1.    The Court Lacks General Jurisdiction Over Launch China.

The exercise of general jurisdiction over a corporation is appropriate where (1) the corporation is organized under the laws of Michigan, (b) the corporation consents to jurisdiction in Michigan, or (c) the corporation carries on a continuous and systematic part of its general business within the state. M.C.L. §600.711; *Aristech Chemical Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

Here, none of the foregoing elements are satisfied. Launch China is organized under the laws of China; it does not consent to the jurisdiction of Michigan; and no part of its business is carried on in Michigan, let alone a continuous and systematic part of its general business. Though the Amended Complaint often blurs the lines between the alleged activities of Launch USA and Launch China, presumably in an effort to conflate the two companies and magnify any alleged activities within the forum, it is uncontroverted that Launch China has

6

no employees in Michigan, no physical presence in this forum, is not licensed to do business in Michigan, and sells no products in the State; thus, there simply is no basis for general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

### 2.    The Court Lacks Specific Jurisdiction Over Launch China.

Specific jurisdiction subjects the defendant "to suit in this forum state only on the claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* To establish specific personal jurisdiction over a defendant in Michigan, the Sixth Circuit has enunciated the following three (3) requirements a plaintiff must show: (a) the defendant purposefully availed itself of the privilege of acting in the forum state; (b) the plaintiff's claims arise from the defendant's activities there; and (c) the acts of the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See LAK, Inc.*, 885 F.2d at 1299; *Southern Mach. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

As detailed below, because Plaintiffs have not and cannot establish these three criteria, Launch China is not subject to specific jurisdiction in Michigan.

### a.    Launch China Did Not Purposefully Avail Itself of the Privilege of Acting In Michigan.

To satisfy the purposeful availment requirement, the defendant's contacts with the forum state must both "proximately result from actions by the defendant

7

himself that create a 'substantial connection' with the forum state" and be such that the defendant "should reasonably anticipate being haled into court there." *CompuServe, Inc.*, 89 F.3d at 1263. In other words, a defendant has "purposefully availed" itself to the benefits of Michigan law only if he has created "continuing relationships and obligations with citizens" of Michigan." *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 150 (6th Cir. 1997). Moreover, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). "It is the defendant's conduct that must form the necessary connection with the forum state. The defendant must have taken actions to benefit from Michigan law." *Coffee Beanery, Ltd. v. Powell*, 932 F. Supp. 980, 984 (E.D. Mich. 1996). Contacts that are "random, fortuitous or attenuated" will not hold. *CompuServe, Inc.*, 89 F.3d at 1263.

Here, Plaintiffs argue that Launch China purposefully availed itself to Michigan. Yet Plaintiffs fail to point to a single fact that creates a substantial connection between Launch China and Michigan, or would cause Launch China to reasonably anticipate being haled into a Michigan court. Rather, Plaintiffs highlight Launch China's strong ties to China, development of products in China, and other operations not alleged to be tied to Michigan. As described *supra* and in the Declaration of James Jiang, Launch China has no relationship with customers, solicits no sales, and has no other conduct with Michigan. Plaintiffs' baseless

attempts to connect Launch China to organizational memberships (ETI) and access to the IDS software in Michigan—which the plain allegations of the Amended Complaint reveal are not Launch China (the entity listed provides a California address)—is too attenuated to constitute purposeful availment.

Moreover, not only do Plaintiffs manifestly misrepresent the "use in commerce" requirement for ownership of a U.S. trademark in the Amended Complaint (which requires only that the mark be used in commerce by a licensee, not by the owner), *see* 15 U.S.C. § 1055, it is well-settled that neither owning nor licensing a trademark (or a patent) is a sufficient basis for establishing minimum contacts for purposes of personal jurisdiction. *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) (holding that absent an agreement that "contemplate[s] a relationship beyond royalty or cross-licensing payment, such as granting the licensor the right to exercise control over the licensee's sales or marketing activities," there is no personal jurisdiction); *see also Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F.Supp.2d 732, 736-37 (N.D. Ill. 2011) (holding that personal jurisdiction did not exist over the licensor of a trademark where licensor did not exercise control over licensee). Launch USA's exclusive license to sell Launch-brand products does not establish personal jurisdiction. The two companies are completely separate, and Launch China has ***absolutely no control*** over Launch USA.

9

Finally, neither the www.x431.com website nor the easydiag app constitute purposeful availment.  Both the website and app offer minimal contact with users, allowing only registration of products and payment for certain add-ons to those previously purchased products.  The app is distributed only through third-party app stores not located in Michigan, and users provide no mailing address.  In order to establish purposeful availment of the forum, a plaintiff must allege that a "commercial connection" exists between the website's operator and the forum state, whereby a defendant "clearly does business over the internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the internet."  *Dolce & Gabbana Trademarks S.r.L. v. TXT Enterprises, Inc.*, No. 14-cv-00855, 2016 WL 8202008 at *4-5 (N.D. Ohio Mar. 9, 2016) (citations omitted).  In that case, the Court held that no personal jurisdiction existed over the defendant, a business headquartered in California, even though its website *could* have allowed approved users from Ohio to purchase products from its website.  *Id*.  Likewise, the mere possibility that a Michigan resident *might* use the website or app simply is not enough to establish the required commercial connection.

Since Launch China does not engage in any in-state activities, it consequently does not engage in any in-state activities underlined connected to the present cause of action.  *See Transportation Commc'ns Int'l Unon v. Sultan*, 187 F. Supp.

10

2d 880, 886 (E.D. Mich. 2002); *see also Niemi v. NHK Spring Co. Ltd.*, 276 F. Supp. 2d 717, 723 (E.D. Mich. 2003).   As a result, Launch China has not purposefully availed itself to the forum State of Michigan.

> **b.**   **Launch China's Activities Did Not Arise from Michigan, and There Is No Connection Between Launch China's Alleged Acts and Michigan.**

This Court cannot exercise jurisdiction unless the cause of action arose from Defendants' Michigan contacts.   "[T]he cause of action" must be "'related to' or 'connected with' the defendant's forum contacts."   *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (citing *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)).   As shown *supra,* Launch China does not have any contacts with the forum.   Therefore, it is a logical impossibility that the claims against Launch China could arise out of any phantom business or activity of Launch China in Michigan.

> **c.**   **The Exercise of Jurisdiction over Launch China would not be Reasonable.**

Because Plaintiffs cannot meet the first two factors to establish specific jurisdiction, the inquiry should end there.   *See Dolce & Gabbana Trademarks*, 2016 WL 8202008 at *4-5.   Even if, however, Plaintiffs could establish the first two factors, Launch China still must be dismissed because it is not reasonable for

Michigan to exercise personal jurisdiction over Launch China.[1] *See LAK, Inc.*, 885 F.2d at 1299; *Southern Mach. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). For example, the burden on Launch China, a Chinese company with no contacts to Michigan, to defend itself in Michigan is substantial.

## B.      The Eastern District of Michigan Is Not a Proper Venue.

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue. Additionally, Section 1391 of Title 28 of the United States Code provides that in a civil action based upon diversity of citizenship, venue is proper in:

> (a) a judicial district where any defendant resides, if all defendants reside in the same State;
> (b) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
> (c) or a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Defendants bear the burden of establishing that venue is improper. *Amphion Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d. 943, 945 (E.D. Mich. 2003).

For a copyright infringement claim, "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." 28

---

[1] Launch China reserves its right to further address this factor should this Court determine that Plaintiffs have met their burden as to the first two factors.

U.S.C. §1400(a). Under Section 1400, "resides" as applied to corporations "refers only to the State of incorporation." *See TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514, 1517 (2017) (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)).

As an initial matter, Plaintiffs fail to allege venue for their copyright claim under Section 1400(a). Moreover, Launch China resides in China, where it is incorporated. Thus, Launch China does not reside in the same state as Launch USA. Plaintiffs' factual allegations describe a substantial part of the events or omissions occurring in China—where the products are manufactured—or California—where Launch USA distributes the products and manages its United States business.

As discussed *supra*, this Court does not have personal jurisdiction over Launch China. Because there is no district in Michigan in which this case may be brought, and there is no other jurisdiction within which Launch China is amenable to personal jurisdiction, then there is no proper forum. Additionally, Plaintiffs fail to allege, even in their second attempt in the Amended Complaint, the proper venue for their copyright claim under Section 1400(a). As such, neither the elements of Section 1391 or Section 1400(a) for proper venue are met. Therefore, the Eastern District of Michigan is not a proper venue and this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

13

### C. This Court Should Dismiss the Claims Against Launch China Pursuant to Rule 12(b)(6).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (2007); *see also In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

Plaintiffs do not state a claim upon which relief can be granted. Specifically, Plaintiffs' Amended Complaint, on its face, does not include sufficient factual content which would allow this court to draw the reasonable inference that Launch China is liable for the allegations put forth by Plaintiffs. As discussed *infra*, this Court should dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6).

### 1. Claim 1: Trademark Infringement and Counterfeiting (15 U.S.C. §§1114, 1116)

Plaintiffs' claim for trademark infringement and counterfeiting cannot

14

survive a motion to dismiss.  To establish a claim for trademark infringement under federal law, a plaintiff must allege facts establishing: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion.  *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).  "Plaintiff must show that it has actually used the designation at issue as a trademark, and that the defendant has also used the same or a similar designation, as a trademark."  *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 939 (6th Cir. 2003).  To establish a claim for counterfeiting, plaintiff must show that: (1) defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as defined in 15 U.S.C. § 1116.  Here, Plaintiffs claims' fail to show any violation of § 1114, and thus, § 1116.  Thus, they have not sufficiently pled facts to state a claim for trademark infringement and counterfeiting.

Notably, Plaintiffs claim that Ford notified *Launch USA* of the alleged trademark infringement on Defendants' website and products in a letter dated January 3, 2012.  (FAC ¶66-67.)  Plaintiffs allege that *Launch USA* responded to this cease and desist letter agreeing to refrain from using Ford's mark.  (FAC ¶68.)  However, Plaintiffs bring no such allegations against *Launch China*.

Particularly, Plaintiffs fail to meet the second prong of a prima facie case for trademark infringement because they cannot show that Launch China used the

mark in commerce (as specifically required by Section 1114)  Notably, the X-431 V has never been sold to Launch USA for resale in the United States, and Launch China discontinued the X-431 Diagun product in 2012, after counterfeiting problems arose.  In other words, Plaintiffs claim that Defendants used Ford marks on the Launch X-431 Diagun product—a product that has not been on the market since 2012—and the X-431 V product—a product not marketed in the United States.  FAC ¶72-76.  This alleged activity cannot support a trademark infringement claim against Launch China.[2]

In an attempt to salvage their claim, Plaintiffs note that the United States Customs and Border Protection detained a shipment of the X-431 Diagun product because it contained Ford's mark.  (FAC ¶70.)  As counsel for Defendant previously advised counsel for Plaintiffs, Launch China believes this product is a counterfeit based on the scant facts provided in the Amended Complaint. Regardless, the product identified by Plaintiffs is not manufactured or distributed by Launch China.  Plaintiffs have not supported their allegations that the alleged infringing products are actually Launch China's products.

Plaintiffs also fail to meet the third prong of §1114 because they cannot show a likelihood of confusion.  Plaintiffs improperly rely on the past use of products that are not sold in Michigan, and products not currently manufactured or

---

[2] Also, these facts show Launch China did not disregard the alleged written commitment by Launch USA.

16

distributed by Launch China in the United States.  Without identifying infringing products by Launch China, these unsubstantiated claims cannot serve as grounds for confusion.  As such, Plaintiffs fail to make the necessary showing for § 1114.

Most significantly, Plaintiffs identify the alleged trademark infringement by pointing to the menu screen of Launch China's products.  First, they do so by referring to a counterfeit version of Defendants' X-431 Diagun product no longer on the market, which has a depiction of the FORD name and logo on the electronic menu screen button, alongside other carmakers.  Then, they do so by referring to Launch China's EasyDiag 2.0 and iDiag applications, the European versions, which show an image of the Ford logo.  (FAC ¶¶38,86.)  There are no factual allegations that Launch China used the Ford mark to indicate the source of its product.  There are also no factual allegations stating why Launch China's alleged use is likely to create customer confusion.

### 2.      Claim 2: False Designation of Origin (15 U.S.C. § 1125(a))

The allegations of false designation are also vague and insufficient.  The essential elements of a federal false designation claim under15 U.S.C. § 1125(a) are, in addition to a false designation, an allegation that (1) the false designation had a substantial economic effect on interstate commerce; and (2) the false designation created a likelihood of confusion.  *See Johnson v. Jones*, 149 F.3d 494, 501 (6th Cir. 1998).

17

Plaintiffs claim that "Launch has used and is continuing to use in commerce false and misleading designations of origins concerning Defendants' products and services and Ford's products and services." (FAC ¶199.) Plaintiffs further state that "Launch's false designations of origin have caused actual confusion," but fail to identify what amounted to the actual confusion. (FAC ¶201.) Specifically, Plaintiffs fail to point to actual infringing products currently being sold in the United States by Launch China or plead why such products would create customer confusion as to the source of the products. Similar to their trademark infringement claim, these facts show neither an effect on commerce nor likelihood of confusion. Consequently, this Court should dismiss this claim pursuant to Rule 12(b)(6).

### 3.  Claim 3:  Unfair Competition

Michigan's common law unfair competition cause of action was codified in M.C.L. § 429.42, which provides:

> Any person who shall: (a) Use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered under this act in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services . . . is liable to a civil action by the owner of the registered mark for any or all of the remedies provided in section 13 . . . . M.C.L. § 429.42(a)-(b); *Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*, 471 F. Supp. 2d 822, 832 (E.D. Mich. 2007).

Plaintiffs allege a claim for unfair competition under Michigan law, but do not cite the aforementioned statute nor plead the elements codified in that statute.

18

Michigan courts consistently have held it is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claim or unravel and collaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v. Detroit*, 355 Mich. 182, 203 (1959).

Importantly, Plaintiffs have not alleged a mark registered under the Michigan trademark infringement statute that Launch China reproduced, counterfeited, copied, or imitated in Michigan.  Thus, Plaintiffs have not properly pled a claim under M.C.L. § 429.42.

### 4.  Claim 4:  Violation of Michigan Consumer Protection Act (M.C.L.  § 445.903)

The Michigan Consumer Protection Act ("MCPA") prohibits "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce."  M.C.L. § 445.903(1).  Unfair business practices under the MCPA are governed by the same standards as the Lanham Act.  *Wynn oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir. 1991); *Wilcom Pts. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1033 (E.D. Mich. 1998); *see also Microsoft Corp. v. Compusource Distribs, Inc.*, 115 F. Supp. 2d 800, 807 (E.D. Mich. 2000) (citing *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1991) ("The applicable standard under the MCPA and under Michigan common law is the same as the tests for federal trademark infringement

and federal unfair competition under 15 U.S.C. §§ 1114(1) and 1125(a): whether confusion is likely.").

Since Launch China has established the central issue (the likelihood of confusion analysis cannot be performed because Plaintiffs have failed to properly identify infringing products), Plaintiffs have therefore also failed to allege a claim under the MCPA.

### 5.    Claim 5:  Dilution (15 U.S.C. § 1125(c)(2))

A claim of dilution under 15 U.S.C. § 1125(c) consists of the following elements: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir. 2000).  Courts recognize two principal forms of dilution: tarnishing and blurring

As proven above, Plaintiffs fail to demonstrate how Launch China used their mark to indicate the source of its product or why Launch China's alleged use is likely to create customer confusion.  Launch China has not diluted Ford's mark by either tarnishing or blurring it with Launch China's products.  This bars their ability of proving the most significant element: that Launch China's use caused dilution of the distinctive quality of Ford's mark.  Therefore, this trademark claim,

20

too, should be dismissed.

### 6.   Claims 6 and 7:  Misappropriation of Trade Secrets (M.C.L. § 445.1903(1) and 18 U.S.C. §§ 1836-1837)

Plaintiffs' allegations fail to state a claim for trade secret misappropriation (either under state or federal law).  Plaintiffs' contentions consist entirely of the types of labels and conclusions prohibited by *Twombly* and the general pleadings standards.  Additionally, Plaintiffs' federal claim cannot apply to acts alleged back in 2012.  Therefore, the trade secret claims should be dismissed.

A complaint cannot state a cause of action for trade secret misappropriation unless it alleges an act of misappropriation.  M.C.L. § 445.1902.  Under Michigan law, a trade secret cannot be "misappropriated" unless (a) the defendant acquired the alleged trade secret through improper means, or (b) the defendant obtained the alleged trade secret from a third party, and defendant knew or had reason to know such third party had obtained the alleged trade secret through improper means.  *See id.* Here, Plaintiffs' claims are devoid of any specific allegation regarding a "trade secret" or "misappropriation" sufficient to meet the "plausibility" standard or to fall within the scope of the statute.  "The first element of a plaintiff alleging misappropriation of trade secrets must prove is that the information at issue actually consists of a trade secret."  *Mike's Train House, Inc. v. Lionel*, LLC, 472 F.3d 398, 410 (6th Cir. 2006).

At the heart of its trade secret claims are Plaintiffs' IDS Software relating to

21

diagnostic tools.  Per Plaintiffs, the IDS Software is available to the public and Plaintiffs granted a subscription to this information to Launch USA.  Thus, Plaintiffs' focus on an alleged subscription to Ford's IDS Software is misplaced, as a subscription alone is insufficient to meet the pleading standard.  If nothing else, this allegation instead demonstrates that Ford's IDS Software is accessible to the public. The same logic applies to the ETI membership allegations, as ETI merely provides another conduit that Ford apparently used to make its professed trade secrets broadly available.

Plaintiffs also fail to allege that Plaintiffs took steps in order to protect the secrecy of that information.  Additionally, Plaintiffs present no allegation that Launch China gained access to supposed confidential information by unlawful or improper means.[3]  To the extent Plaintiffs address the act of misappropriation, Plaintiffs equate their ambiguous factual allegations concerning some "confidential information" to the required standard for "trade secrets."  Plaintiffs fail to provide any factual content as to the "who," "what," "when," "how," or "why" sufficient to establish an act of misappropriation.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008).

---

[3] Plaintiffs' claims regarding reverse engineering are not actionable as trade secret misappropriation.  *See, e.g.*, *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, 2008 WL 696546, at *10 (W.D. Mich. March 13, 2008) ("[T]rade secret law does not forbid the discovery of the trade secret by fair and honest means, e.g., independent creation or reverse engineering . . . .") (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 489-90 (1974)).

Accordingly, Plaintiffs' allegations simply do not substantiate their trade secrets claim. The Amended Complaint never identifies who, if anyone, at Launch China obtained Ford's alleged trade secrets; when, where and why such alleged trade secrets were obtained; and whether the person who received Ford's alleged trade secrets had an obligation to maintain their secrecy. Without such allegations, this Amended Complaint is unfounded. *Total Benefits Planning*, 552 F.3d at 437 (dismissing claim under 12(b)(6) that presented only conclusory allegations); *CBC Cos., Inc. v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009) (same).

Courts outside this jurisdiction have dismissed trade secret complaints under Rule 12(b)(6) with similar, or even more detailed, facts than Plaintiffs plead here. *See Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369 (M.D. Fla. 2008) (dismissing trade secret claim where the complaint gave no details as to how the defendants used the trade secrets). For example, a court dismissed a trade secret claim where the plaintiff failed to plead facts supporting the allegation that defendant stole its trade secrets, having relied entirely on the fact that plaintiff's former vice president was working for the defendant. *Medafor, Inc. v. Starch Med. Inc.*, 2009 WL 2163580 at *1 (D. Minn. July 16, 2009). The instant Amended Complaint offers not even that much; rather, Plaintiffs rely—inadequately—on a subscription to their IDS Software (a subscription several other companies have and look to for their own database systems) and make no connection between that

23

subscription and Launch China.

As another example, in *Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp.2d 654 (D. Del. 2008), that court dismissed a trade secret action where the plaintiff failed to plead that defendant had obtained the trade secrets by improper means. In particular, plaintiff's allegation that defendant won a contract from a third party with access to the trade secrets and thereby "somehow" obtained the trade secrets was insufficient to plead the required element. *See id.* at 663-64.

In addition to the deficiencies above, Plaintiffs' federal trade secret claim also fails for an independent reason. Here, according to Plaintiffs, the alleged trade secret misappropriation occurred in 2012. This is years before the enactment of the DTSA in 2016,[4] and Plaintiffs identify no evidence of misappropriation against Launch China that began on or after 2016. Importantly, trade secret misappropriation is not a continuing offense. "The wrong occurs at the time of the improper acquisition." *Russell v. Wall Wire Products*, 346 Mich. 581 (1956). Since Plaintiffs' 2012 allegations occurred long before the enactment of the DTSA,

---

[4] The Defend Trade Secrets Act ("DTSA") is clear: "The amendments made by this section shall apply with respect to any misappropriation of a trade secret for which any act occurs on or after the date of the enactment of this Act." 18 U.S.C. §1836 (2)(e). That date of enactment of the DTSA was May 11, 2016.

24

they cannot apply to this claim.[5]  As such, this Court should dismiss Plaintiffs' claims under §1836 and §1837.

### 7.   Claim 8:  Copyright Infringement

Plaintiffs' copyright infringement pleadings suffer from multiple defects. First, the statute of limitations for bringing a copyright infringement claim is three years.  17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc*., 134 S. Ct. 1962 (2014) ("A copyright claim arises or accrues, triggering the three-year limitations period, when an infringing act occurs.").  Plaintiffs sat on their claim since 2012 when they learned of the alleged infringement, and their delay is a poor attempt to unreasonably increase any award of damages.  The Sixth Circuit rejects any notion that a plaintiff can recover for acts of alleged infringement occurring more than three years before the filing of a complaint merely because some related act of infringement occurs within the limitation period.  *See Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004).   It is now five years later—well outside the statute of limitations period, and the copyright claim should therefore be dismissed.

In addition to the above fatal defect, Plaintiffs' pleadings are also incongruent with their limited copyright registration as a *compilation of data* for the file CALID_VIDQID_REC.  In registering their file as a compilation, Plaintiffs

---

[5] Also, Plaintiffs sat on these allegations for years before bringing their claim, and thus, the extent of their alleged injury was avoidable.

conceded that the data itself was not protectable.  For data compilations, only the "selection, coordination, and arrangement of facts" are original and copyrightable; the underlying facts may be "freely copied."  *Feist Publ'ns, Inc. Rural Telephone Services, Co., Inc*., 499 U.S. 340, 359 (1991*)*.  In order to set forth a cause of action against Launch China upon which relief may be granted, Plaintiffs must properly and sufficiently assert that Launch China copied the *compilation* of software data protected by Plaintiffs' copyright.

Notwithstanding the restrictions upon their purported claim, Plaintiffs nonetheless allege the copying of "Ford's proprietary CALID_VIDQID_REC data." Dkt. 16 at ¶ 252.  Even if their copyright registration was proven valid, Plaintiffs do not have any rights in the data itself.  Nor can they establish infringement of a compilation by the alleged copying of selected "fictitious" data records (*Id*. at ¶ 114).  Such allegations must fail as a matter of law, as Plaintiffs' vague allegations are particularly deficient in light of the limited nature of the authorship stated on the copyright registration they obtained.  *Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607, 611 (E.D. Mich. 2012). Plaintiffs' alleged copyright in the compilation of data can only protect, at best, the arrangement of data, not the underlying data itself, which may be "freely copied." *Feist*, 499 U.S. at 359.

26

Accordingly, Plaintiffs' claim for copyright infringement should be dismissed; alternatively, at a minimum, the allegations related to file CALID_VIDQID_REC should be dismissed as inconsistent with Plaintiffs' limited claim in a compilation of data.

### 8.   Claim 9:  Breach of Contract

Plaintiffs allegedly provide users of their IDS Software with an End User License Agreement ("EULA") that prohibits reverse engineering and use by a "diagnostic toolmaker."   (FAC ¶¶181-186.)   Plaintiffs allege Launch China accessed their IDS Software as "diagnostic toolmakers" and "reversed engineered" the software, thereby breaching the EULA.  As discussed *supra*, however, the plain allegations of the Amended Complaint establish the error.   First, the allegation that an entity named "L aunch" with a California address equates to Launch China is without merit.  (*Id*. ¶¶ 39-44.)  Second, the EULA is too vague to be enforceable. (*Id*. at Ex. S.)  Initially, it fails to define "diagnostic toolmaker," and the express language of the EULA itself applies only to the defined "End-User"—which specifically excludes a diagnostic toolmaker.   Yet none of the terms of the agreement specify the rights or obligations of an "End-User."  Therefore, based on sound principles of contract interpretation, Plaintiffs' allegations that Launch China—which it is undisputed is located in China—has breached the EULA are insufficient.

27

Finally, Plaintiffs conflate the two defendants – Launch China and Launch USA – for purposes of their breach of contract claim, never alleging that Launch China was a signatory to the cease and desist letter also identified as a basis of a breach.  (*Id*. ¶ 265.)  The purpose of that conflation and omission is revealed in Exhibit J to the Amended Complaint, which clearly identifies only Launch USA.

Such a bare bones claim should not survive a motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, Launch China respectfully requests that this Court dismiss the Amended Complaint in its entirety, with prejudice.

Date: December 21, 2017                              Respectfully submitted,

                                                            By: */s/ Deanna Kunze*

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **MOTION OF LAUNCH TECH CO., LTD. FOR DISMISSAL PURSUANT TO RULES 12(b)(2), 12(b)(3) and 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE and its BRIEF IN SUPPORT THERETOF** has been filed through the ECF system on December 21, 2017, and will therefore be sent electronically by the ECF system to all registered participants.  Further, the Proposed Order was submitted through the ECF system and emailed to all counsel of record.

*/s/ Deanna Kunze*
Deanna Kunze

29